STEPHAN J. WILLEN AND ELIZABETH F. WILLEN, PLAINTIFFS v.
SUSANNAH L. HEWSON, DEFENDANT

No. COA05-81

(Filed 6 December 2005)

**1. Fraud— trespass and vandalism problem on property—reasonable reliance upon representations**

The trial court did not err by concluding that defendant committed fraud even though defendant contends plaintiffs failed to demonstrate that they were denied the opportunity to investigate the pertinent property or that they could not have discovered the trespass and vandalism problem through the exercise of due diligence, because: (1) even if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses; (2) plaintiffs reasonably relied upon defendant's representations that the property was peaceful and serene and that it did not suffer from trespass problems; (3) when plaintiffs specifically inquired of defendant regarding a potential trespass problem, she denied that such problem existed although she had full knowledge of the severity of the trespass and vandalism problem at the property; (4) the trespass problem was a material fact which defendant deliberately concealed in order to realize a substantial profit on the sale of her property; and (5) plaintiffs would not have purchased the property had they known of the trespass and vandalism problem.

**2. Unfair Trade Practices— fraud—sale of property**

The trial court did not err by concluding that defendant's actions of representing that the pertinent property was peaceful and serene and that it did not suffer from trespass problems constituted unfair and deceptive trade practices, because: (1) proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive acts and the burden shifts to defendant to prove he is exempt from the provisions of N.C.G.S. § 75-1.1; (2) defendant was not engaged in the sale of her own residence; and (3) defendant was motivated by the potential for profit, and she received actual gross profit of $253,165 from her conduct.

**3. Costs— attorney fees—no showing of abuse of discretion**

Although defendant contends the trial court abused its discretion in awarding attorney fees in a fraud and unfair and decep-

**WILLEN v. HEWSON**

[174 N.C. App. 714 (2005)]

tive trade practices case, this assignment of error is overruled because there is no evidence of an abuse of discretion by the trial court and the trial court made all of the necessary findings to support its award of attorney fees.

### 4. Costs— attorney fees—appeal

Although the trial court did not abuse its discretion by failing to award more than $55,000 in attorney fees for the trial of a fraud and unfair and deceptive trade practices case, the case is remanded for a determination of the hours spent on appeal, for a reasonable hourly rate, and for the entry of an appropriate attorney fee award. Plaintiffs are entitled to attorney fees on appeal since plaintiffs were entitled to attorney fees for hours expended at the trial level.

Appeal by defendant and plaintiffs from judgment entered 17 June 2004, and appeal by defendant from an order entered 25 June 2004 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 October 2005.

*Bishop, Capitano & Moss, P.A., by A. Todd Capitano; Robinson, Bradshaw & Hinson, P.A., by A. Ward McKeithen, for plaintiff-appellants.*

*Jones, Hewson & Woolard, by Lawrence J. Goldman, for defendant-appellant.*

HUNTER, Judge.

Susannah Hewson ("defendant") appeals from a judgment and an order of the trial court awarding $322,753.59 to Stephan Willen ("Stephan") and Elizabeth Willen (collectively "plaintiffs") on their claims against defendant for fraud and unfair and deceptive practices, and from the trial court's granting of attorneys' fees in the amount of $55,000.00 and costs in the amount of $3,284.18. Defendant contends on appeal the trial court erred in concluding that she committed fraud or unfair and deceptive practices. Plaintiffs also appeal, arguing the trial court failed to award appropriate attorneys' fees. For the reasons stated herein, we affirm the judgment and order of the trial court.

Plaintiffs presented evidence at trial tending to show the following, as found by the trial court: On or about 2 May 2000, plaintiffs read an advertising circular featuring for sale property owned by defendant in Mecklenburg County, North Carolina. Plaintiffs subsequently

viewed the property, an estate of approximately twenty-two acres of land with a large house, known as "Deverill," and received marketing material advertising Deverill as "peaceful" and "serene." Plaintiffs subsequently met with defendant at Deverill and informed her of their desire to have a rural setting in which to raise their four small children. Defendant had been raised at Deverill and had resided on property adjacent to Deverill for more than forty years. Defendant had purchased Deverill only two months earlier at a partition proceeding for $685,000.00. She informed plaintiffs that Deverill was suitable for raising children and told them stories of her own upbringing on the property to encourage their belief as to the property's suitability. Defendant never informed plaintiffs that Deverill was not, in fact, peaceful or serene.

In reliance upon defendant's representations concerning Deverill, including her description of the property as peaceful and serene, plaintiffs executed two purchase agreements with defendant: One for the house and surrounding eight acres at a purchase price of $700,000.00, and the other for the remaining approximately fourteen acres at a purchase price of $238,165.00. The contracts provided that plaintiffs would be excused from closing on the property if they were unable to sell their existing residence by 30 August 2000. The contracts also provided plaintiffs the right to inspect the property and to walk away from the transaction.

During an inspection of the property on 1 July 2000, plaintiffs encountered defendant's niece, Sherry Langevin ("Langevin"). Langevin had resided on property adjacent to Deverill since 1987. During their conversation, Langevin mentioned that there had been problems with "kids coming onto the property after high school football games around Halloween." Stephan subsequently telephoned defendant and specifically inquired whether Deverill suffered from a trespass problem. Defendant denied any trespass problem existed, and stated that such incidents had only happened once or twice. Defendant told Stephan that Langevin often exaggerated, and that her statement about the trespassing was one such example.

Plaintiffs were unable to sell their home by 30 August 2000. They did not elect to terminate their contract, however, as was their right, and eventually closed on the purchase of Deverill on 29 September 2000.

Shortly after moving into their new home, plaintiffs discovered that Deverill suffered from a material, long-standing, and year-round

problem with trespass and vandalism. Over the ensuing two years, plaintiffs experienced frequent incidents of trespass and vandalism. Plaintiffs lost numerous items of personal property due to theft, suffered suspected arson at one of their buildings, were verbally accosted in their own yard, and had windows and lights shot out with guns. Stephan was physically assaulted. These incidents caused plaintiffs to develop a "siege mentality" which materially altered their lifestyle. In response to the trespass and vandalism problems, plaintiffs installed a new gate at the entrance of their driveway, a home security system, and a security fence around a portion of the perimeter of their home. For cost reasons, plaintiffs did not fully encircle their home or the entire twenty-two acres of property. The security measures taken by plaintiffs, however, failed to eliminate the trespass and vandalism problems.

Stephan wrote to defendant in March 2001 concerning her failure to inform plaintiffs of the trespass problems associated with Deverill and asked that she participate in appropriate security measures. Defendant responded to the letter by having her attorney meet with Stephan, through whom defendant denied knowledge of the problem and informed him that the rule of *caveat emptor* absolved her of responsibility.

The trial court found that defendant was aware of the scope and severity of the trespass and vandalism problems at Deverill, but purposely withheld this information from plaintiffs. In response to plaintiffs' specific inquiry, defendant denied the existence of any trespassing problem and represented Deverill as peaceful and serene, although she knew these representations were false. Further, defendant "engaged in an artifice intended to discourage [plaintiffs] from making further inquiry about [the trespass and vandalism problems] by discrediting the Langevins . . . ." The trial court also found that "there were not sufficient indicia of trespass and vandalism problems visible on or adjacent to Deverill in 2000 to have put reasonable persons in [plaintiffs'] position on notice of the pervasive trespass problems associated with the property."

The trial court concluded that defendant's conduct constituted fraud and unfair and deceptive practices and entered judgment in favor of plaintiffs in the amount of $322,753.59. The trial court also awarded reasonable attorneys' fees in the amount of $55,000.00 and costs of $3,284.18. Defendant and plaintiffs appeal.

## I. Defendant's Appeal

**[1]** Defendant argues the trial court erred in concluding that she committed fraud. Specifically, defendant contends plaintiffs failed to demonstrate that they were denied the opportunity to investigate the property, or that they could not have discovered the trespass and vandalism problem through the exercise of due diligence. We find no merit to this argument.

" 'It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " *Keel v. Private Bus., Inc.*, 163 N.C. App. 703, 707, 594 S.E.2d 796, 799 (quoting *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992)), *disc. review dismissed*, 358 N.C. 732, 601 S.E.2d 535 (2004). Where such competent evidence exists, this Court is bound by the trial court's findings of fact even if there is also other evidence in the record that would sustain findings to the contrary. *Eley v. Mid/East Acceptance Corp.*, 171 N.C. App. 368, 369, 614 S.E.2d 555, 558 (2005). The trial court's conclusions of law, by contrast, are reviewable *de novo. Id.*

In the present case, defendant assigned error to numerous findings of fact by the trial court, but has failed to argue any of these assignments of error in her brief on appeal. Such assignments of error are therefore abandoned, and the trial court's findings are binding on appeal. *See* N.C.R. App. P. 28(a). We must now determine whether the findings made by the trial court support its conclusion that defendant committed fraud and unfair and deceptive practices. We begin with an examination of fraud.

An actionable claim for fraud must include the following elements: (1) a false representation or a concealment of a material fact which is (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party. *State Properties, LLC v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002), *disc. review dismissed*, 356 N.C. 694, 577 S.E.2d 889 (2003). A plaintiff's reliance on alleged false representations by the defendant must be reasonable. *Id.* Where a plaintiff fails to make any independent investigation, or if a plaintiff is informed of the true condition of the property, reliance is not reasonable. *Id.* at 73, 574 S.E.2d at 186. "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Id.*

Defendant contends plaintiffs' reliance upon her alleged misrepresentation that no trespass problem existed was unreasonable as a matter of law, in that plaintiffs failed to make a sufficient independent investigation. Further, defendant argues, plaintiffs had knowledge of potential trespassing problems from the information supplied them by Langevin. Defendant contends these factors are fatal to plaintiffs' claim. We disagree.

" 'Even if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses.' " *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 438, 617 S.E.2d 664, 671 (2005) (quoting *Freese v. Smith*, 110 N.C. App. 28, 35, 428 S.E.2d 841, 846 (1993)). Even where a plaintiff's reliance is unreasonable,

> in close cases, sellers [who] intentionally and falsely represent[] material facts so as to induce a party to action "should not be permitted to say in effect, 'You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you.' "

*Id.* (quoting *Johnson v. Owens*, 263 N.C. 754, 758, 140 S.E.2d 311, 314 (1965)).

In the instant case, the evidence tended to show, and the trial court found, that "[plaintiffs] reasonably relied upon [defendant's] representations that Deverill was peaceful and serene and that it did not suffer from trespass problems." Further, the trial court found that "[defendant] intended that [plaintiffs] rely on her representations concerning the peaceful and serene character of Deverill and her denial of a trespass problem and that they forego any further inquiry concerning the subject matter." The trial court found "that there were not sufficient indicia of trespass and vandalism problems visible on or adjacent to Deverill in 2000 to have put reasonable persons in the [plaintiffs'] position on notice of the pervasive trespass problems associated with the property." Finally, the trial court found that "[defendant] engaged in an artifice intended to discourage the [plaintiffs] from making further inquiry about such issues by discrediting the Langevins in her July 3, 2000 telephone call with [Stephan]."

When plaintiffs specifically inquired of defendant regarding a potential trespass problem, she denied that such problem existed, although she had full knowledge of the severity of the trespass and vandalism problem at Deverill. The trespass problem was a material

fact which defendant deliberately concealed in order to realize a substantial profit on the sale of her property. The trial court found that plaintiffs would not have purchased the property had they known of the trespass and vandalism problem. We conclude the trial court properly determined that plaintiffs' reliance upon defendant's false representations was reasonable and not fatal to their claim of fraud. We overrule this assignment of error.

**[2]** By further assignment of error, defendant argues the trial court erred in concluding her actions constituted unfair and deceptive practices. "The elements for a claim for unfair and deceptive trade practices are (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders LLC*, 172 N.C. App. at 439, 617 S.E.2d at 671. Whether the facts that are proven at trial establish an unfair or deceptive practice is a question of law addressed by the court. *Id.* at 439, 617 S.E.2d at 672. " 'Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . .' " *Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991) (quoting *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975)). "Once the plaintiff has proven fraud, thereby establishing *prima facie* a violation of Chapter 75, the burden shifts to the defendant to prove that he is exempt from the provisions of N.C.G.S. § 75-1.1." *Id.* at 243-44, 400 S.E.2d at 442 (emphasis added) (citation omitted).

Defendant argues she is exempt from Chapter 75, in that the sale of Deverill was an "isolated occurrence" which did not affect commerce. Our Supreme Court rejected this argument in *Bhatti*:

Assuming that a "homeowner's exception" exists, its application is limited to an individual involved in the sale of his or her own residence. . . .

The defendant did not prove that the transaction was anything other than a business activity well within the banks of the stream of commerce as broadly defined by the General Assembly in N.C.G.S. § 75-1.1. As such, plaintiff is entitled to the protection of the statute.

*Id.* at 246, 400 S.E.2d at 444.

Defendant here was not engaged in the sale of her own residence. In fact, she had purchased the property only two months earlier for

**WILLEN v. HEWSON**

[174 N.C. App. 714 (2005)]

$685,000.00. The trial court found that she "was motivated by the potential for profit, and she received actual gross profit in the amount of $253,165 from her conduct[.]" As such, she has not carried her burden of demonstrating that the transaction was beyond the scope of Chapter 75. We overrule this assignment of error.

**[3]** Finally, defendant argues the trial court abused its discretion in awarding attorneys' fees. "A trial court's award for attorney's fees may only be overturned on appeal if the trial court abused its discretion." *Reinhold v. Lucas*, 167 N.C. App. 735, 739, 606 S.E.2d 412, 415 (2005). "Abuse of discretion occurs where a trial court's determination cannot be supported by reason." *Id.* Section 75-16.1 of our General Statutes provides that:

> In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:
>
> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or
>
> (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1 (2003). In order to award attorneys' fees under this section,

> the trial court must find: (1) plaintiff is the prevailing party; (2) defendant willfully engaged in the act at issue; and (3) defendant made an unwarranted refusal to fully resolve the matter. Even if the requirements are met, an award of attorney's fees under N.C. Gen. Stat. § 75-16.1 is in the trial court's discretion.

*Evans v. Full Circle Productions*, 114 N.C. App. 777, 781, 443 S.E.2d 108, 110 (1994).

There is no evidence of an abuse of discretion by the trial court in the present case. The trial court made all of the necessary findings to support its award of attorneys' fees. It is clear from the detailed findings in its judgment and order that the trial court examined the

record and made reasonable findings. Although defendant assigned error to the trial court's award of costs, she has made no argument regarding costs in her brief on appeal. Defendant has abandoned this assignment of error, and we therefore do not address it. We overrule defendant's final assignment of error.

## II. Plaintiffs' Appeal

[4] Plaintiffs also argue the trial court abused its discretion when it failed to award more than $55,000.00 in attorneys' fees. The trial court found that "the time spent by plaintiffs' counsel in the prosecution of this matter was reasonably warranted by the complexity of the case, the scope of the harm suffered by the [plaintiffs] and the defendant's refusal to resolve the matter before trial." The trial court also found that "[p]laintiffs' counsel were experienced lawyers within the community, and the hourly rates they and their staff charged were reasonable both in the context of their levels of experience and in relation to their peers." Plaintiffs' attorneys submitted affidavits showing the reasonable value of the legal services rendered to plaintiffs to be $112,869.50. Given that the trial court found that (1) the time and (2) the hourly rates by plaintiffs' attorneys were both reasonable, plaintiffs argue the trial court abused its discretion by failing to award any amount less than the sum of these two factors (in this case, $112,869.50). We disagree.

As noted *supra*, "[e]ven if the requirements are met, an award of attorney's fees under N.C. Gen. Stat. § 75-16.1 is in the trial court's discretion." *Evans*, 114 N.C. App. at 781, 443 S.E.2d at 110. Thus, even where the trial court finds that the plaintiff is the prevailing party, and the defendant willfully engaged in unfair and deceptive practices and made an unwarranted refusal to resolve the matter, the trial court may still, in its discretion, refuse to award attorneys' fees. Given that the trial court may refuse to award any attorneys' fees, we cannot say that the decision to award approximately half of the amount requested by plaintiffs' attorneys constitutes an abuse of discretion, manifestly unsupported by reason. *See id.* We conclude there is no abuse of discretion by the trial court in its award of attorneys' fees.

Plaintiffs have also requested attorneys' fees incurred during this appeal. " 'Upon a finding that [appellees] were entitled to attorney's fees in obtaining their judgment [under N.C. Gen. Stat. § 75-16.1], any effort by [appellees] to protect that judgment should likewise entitle them to attorney's fees.' " *Eley v. Mid/East Acceptance Corp.*, 171

N.C. App. at 376-77, 614 S.E.2d at 562 (quoting *City Finance Co. v. Boykin*, 86 N.C. App. 446, 449, 358 S.E.2d 83, 85 (1987)); *see also Garlock v. Henson*, 112 N.C. App. 243, 247, 435 S.E.2d 114, 116 (1993) (citations omitted) ("[b]ecause plaintiff is entitled to attorney fees for time spent protecting his judgment, we remand this case for a determination and award of a reasonable attorney fee for time spent defending this appeal"). Accordingly, because plaintiffs were entitled to attorneys' fees for hours expended at the trial level, plaintiffs are entitled to attorneys' fees on appeal. We remand to the trial court for a determination of the hours spent on appeal and a reasonable hourly rate and for the entry of an appropriate attorneys' fee award.

The judgment and order of the trial court are affirmed. We remand for a determination of entry of an appropriate attorneys' fee award.

Affirmed and remanded.

Chief Judge MARTIN and Judge STEELMAN concur.